UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES MICHAEL NICHOLS, | : | CIVIL ACTION NO. 3:11-cv-1210 |
| Plaintiff | : | |
| | : | (Judge Nealon) |
| v. | : | **FILED** |
| | : | **SCRANTON** |
| HARLEY LAPPIN, ET AL., | : | MAY 2 5 2012 |
| Defendants | : | PER _____ |
| | | DEPUTY CLERK |

## MEMORANDUM

**Background**

This pro se Bivens[1]-type civil rights action was initiated by James Michael Nichols regarding his prior confinement at the Allenwood Low Security Correctional Institution, White Deer, Pennsylvania (LSCI-Allenwood.).[2] Named as Defendants are the Federal Bureau of Prisons (BOP) and three of its officials, Director Harley Lappin, General Counsel Harrell Watts, and Regional Director J. L. Norwood. Plaintiff is also proceeding against the following LSCI-Allenwood Officials: Warden William Scism, Associate Warden Julie Nicklin, Health Services Administrator R. Laino, and Assistant Health Services Administrator D. Spotts.[3]

The Complaint asserts that since August 1, 2010, Nichols was denied "timely, adequate, and proper medical treatment for his dense, opaque cataract on plaintiff's left eye." (Doc. 1, ¶ 2.) Plaintiff asserts that while confined at LSCI-Allenwood he was denied cataract surgery on his left

---

[1] Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971). Bivens stands for the proposition that "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal question jurisdiction of the district court to obtain an award of monetary damages against the responsible federal official." Butz v. Economou, 438 U.S. 478, 504 (1978).

[2] Nichols is presently residing in Maysel, West Virginia. (Doc. 32.)

[3] Nicklin, Laino and Spotts sit on the prison's Utilization Review Committee (URC) which is responsible for rendering decisions on medical treatment and surgical requests.

eye. As a result, "Plaintiff has suffered difficulty in seeing out of his eye." (Id. at ¶ 18.) Plaintiff adds that the failure to provide surgery was caused by overcrowding and reduced staff[4] as well as arbitrary and burdensome procedures. Moreover, the failure to provide surgery has allegedly placed a strain on Nichols' right eye "where cataract surgery was done on April 14, 2010." (Id. at ¶ 19.) As relief, Plaintiff seeks monetary damages.

Exhibits attached to the Complaint provide that Plaintiff had an initial consultation with an ophthalmologist on January 28, 2010 at which time it was revealed that Nichols had bilateral cataracts, with his right eye being greater than his left. Cataract surgery was recommended for Plaintiff's right eye but not for his left eye. While Plaintiff was confined at the Federal Prison Camp, Beckley, West Virginia (FPC-Beckley) on April 14, 2010, he underwent cataract surgery on his right eye.[5] On November 8, 2010, Plaintiff had a follow-up screening with an optometrist who similarly noted a dense cataract on Plaintiff's left eye but concluded that said condition did not meet the criteria for cataract surgery.[6]

Filings subsequently submitted by the parties concur that following a September 12, 2011 consultation with an optometrist it was determined that Plaintiff's sight in his left eye had worsened. On September 21, 2011, cataract surgery was approved for Plaintiff's left eye.

Presently pending is Defendants' motion to dismiss or, in the alternative, for summary

---

[4] (Doc. 1, ¶ 8.) Plaintiff contends that Lappin gave testimony before a Congressional committee that overcrowding and reduced staff negatively impacted the ability to provide medical care to federal inmates.

[5] Nichols' reply brief indicates that he was confined at FPC-Beckley before being transferred to LSCI-Allenwood. (Doc. 27, p. 5.)

[6] An exhibit attached to the Complaint indicates that Plaintiff's eligibility for cataract surgery was based upon parameters established by the Ophthalmology Guidance Clinical Practice Guidelines. There is no indication as to who was responsible for the development and implementation of said guidelines. Moreover, Plaintiff offers no assertions which could support a claim that the guidelines were constitutionally deficient.

judgment. (Doc. 20.) The motion has been briefed and is ripe for consideration.

**Discussion**

Defendants argue that they are entitled to entry of dismissal or summary judgment on the grounds that: (1) the BOP is not a properly named defendant; (2) they are entitled to sovereign immunity with respect to the monetary claims against them in their official capacities; (3) Plaintiff cannot establish liability against them based upon a theory of respondeat superior; (4) a viable claim of cruel and unusual punishment is not set forth; (5) there was no deliberate indifference to a serious medical need; and (6) they are entitled to qualified immunity.

**Standard of Review**

Defendants' pending dispositive motion is supported by evidentiary materials outside the pleadings. Federal Rule of Civil Procedure 12(d) provides in part as follows:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleading are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(d). The Court will not exclude the evidentiary materials accompanying the Defendants' motion. Thus, the motion will be treated as solely seeking summary judgment.

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); See also Saldana v. Kmart Corp., 260 F.3d 228, 231-32 (3d Cir. 2001). A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. Id. at 248.

The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. Saldana, 260 F.3d at 232; see also Reeder v. Sybron Transition Corp., 142 F.R.D. 607, 609 (M.D. Pa. 1992). Unsubstantiated arguments made in briefs are not considered evidence of asserted facts. Versarge v. Township of Clinton, 984 F.2d 1359, 1370 (3d Cir. 1993).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Id. (internal quotations omitted); see also Saldana, 260 F.3d at 232 (citations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." Celotex, 477 U.S. at 322-23. "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'" Saldana, 260 F.3d at 232 (quoting Williams v. Borough of West Chester, 891 F.2d 458, 460-61 (3d Cir. 1989)).

**BOP**

Defendants initially contend that because it is an agency the BOP is not a properly named defendant in this action. (Doc. 23, p. 6, n. 2.)

It is well-settled that governmental entities are not persons and therefore not proper defendants in a federal civil rights action. Hindes v. F.D.I.C., 137 F.3d 148, 159 (3d Cir. 1998) (a

4

federal agency is not a "person" subject to § 1983 liability, whether or not it is in an alleged conspiracy with state actors). See also Accardi v. United States, 435 F. 2d 1239, 1241 (3d Cir. 1970); Figueroa-Garay v. Muncipality of Rio Grande, 364 F. Supp.2d 117, 128 (D. P. R. 2005). Similarly, in Shannon v. U.S. Parole Commission, 1998 WL 557584 *3 (S.D.N.Y. Sept. 2, 1998), the district court stated that "Bivens claims may not be maintained against federal agencies." See also Duarte v. Bureau of Prisons, 1995 WL 708427 *2 (D. Kan. Nov. 3, 1995)(the BOP "is not a proper defendant in a Bivens action.").

Based on an application of the above standards, the BOP is not a properly named Defendant and therefore entitled to summary judgment.

**Sovereign Immunity**

Defendants' second argument asserts that the claims against the individual Defendants in their official capacities is barred by the doctrine of sovereign immunity. (Doc. 23, p. 6.)

The United States is generally immune from suit absent an explicit waiver of sovereign immunity, United States v. Mitchell, 445 U.S. 535, 538 (1980). This "immunity is jurisdictional in nature," FDIC v. Meyer, 510 U.S. 471, 475 (1994), and extends to government agencies and employees sued in their official capacities. Antol v. Perry, 82 F.3d 1291, 1296 (3d Cir. 1996); Chinchello v. Fenton, 805 F. 2d 126, 130, n.4 (3d Cir. 1986).

"Congress has not waived sovereign immunity for damages claims for constitutional violations." Germosen v. Reno, Civil No. 99-1268, slip op. at 13 (M.D. Pa. Sept. 20, 2000) (Vanaskie, C.J.). Therefore, entry of summary judgment in favor of the Defendants is appropriate to the extent that the present complaint asserts Bivens claims against them in their official capacities.

**Respondeat Superior**

Defendants next argue that they do not provide medical care to inmates and there is no allegation set forth in the Complaint that they were personally involved in the alleged constitutional misconduct. (Doc. 23, p. 10.) They note that LSCI-Allenwood does not employ "optometry doctors" and inmates requiring eye care are sent to "a contract optometry specialist in the community." (Id. at p. 11.) Moreover, "the decision whether an inmate needs to be seen by a contract physician is determined by a BOP physician who is the clinical director of the health services department." (Id.)

Based upon those considerations, Defendants conclude that they are entitled to entry of summary judgment since Plaintiff is attempting to establish liability against them based upon either their respective supervisory capacities or on their review of his administrative grievances.

A plaintiff, in order to state an actionable civil rights claim, must plead two essential elements: (1) that the conduct complained of was committed by a person acting under color of law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. Groman v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

Civil rights claims cannot be premised on a theory of respondeat superior. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim. See Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976). As explained in Rode:

> A defendant in a civil rights action must have personal involvement in the

> alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

Rode, 845 F.2d at 1207.

Prisoners also have no constitutionally protected right to a grievance procedure. See Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 137-38 (1977)(Burger, C.J., concurring) ("I do not suggest that the [grievance] procedures are constitutionally mandated."); Speight v. Sims, No. 08-2038, 2008 WL 2600723 at *1 (3d Cir. Jun 30, 2008)(citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001)("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner.")

While prisoners do have a constitutional right to seek redress of their grievances from the government, that right is the right of access to the courts which is not compromised by the failure of prison officials to address an inmate's grievance. See Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991) (federal grievance regulations providing for administrative remedy procedure do not create liberty interest in access to that procedure). Pursuant to those decisions, any attempt by a prisoner to establish liability against a correctional official based upon their handling of his administrative grievances or complaints does not support a constitutional claim. See also Alexander v. Gennarini, 144 Fed. Appx. 924, 925 (3d Cir. 2005)(involvement in post-incident grievance process not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable).

Based upon an application of the standards announced in <u>Rode</u> and <u>Hampton</u>, Plaintiff's action to the extent that it seeks to establish liability against Defendants Director Lappin, General Counsel Watts, Regional Director Norwood, Warden Scism, Associate Warden Nicklin, HSA Laino and Assistant HSAA Spotts solely based upon their respective supervisory capacities within either the BOP or LSCI-Allenwood cannot proceed.  Such <u>respondeat superior</u> type assertions are simply insufficient for establishing civil rights liability.[7]  Likewise, any attempt by Nichols to set forth a <u>Bivens</u> claim against the Defendants solely based upon their responses to administrative grievances which he submitted regarding his eye care is equally inadequate under <u>Flick</u> and <u>Alexander</u>.

Accordingly, summary judgment will be granted in favor of the Defendants with respect to any claim asserted against them which are solely based upon either their supervisory capacities with either the BOP or LSCI-Allenwood or based upon their responses to Plaintiff's administrative grievances.

**Deliberate Indifference**

Defendants also contend that a viable claim of deliberate indifference to a medical need has not been stated because Nichols was undisputably provided with medical care including cataract surgery on his right eye in April, 2010.  More importantly, because the specialists who provided Plaintiff with treatment during the relevant time period did not recommend cataract surgery for the prisoner's left eye the failure of the Defendants to provide him with such surgery was constitutionally acceptable.

Prison officials are required under the Eighth Amendment to provide basic medical

---

[7] Furthermore, Plaintiff's bald assertion that congressional testimony given by Lappin can serve as a basis for a claim of deliberate indifference to his personal medical needs is insufficient.

8

treatment to prisoners. Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) (citing Estelle v. Gamble, 429 U.S. 97 (1976)). The proper analysis for evaluating a deliberate indifference claim is whether a prison official "acted or failed to act despite his knowledge of a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 841 (1994).

An inmate must allege acts or omissions by prison officials sufficiently harmful to evidence deliberate indifference to a serious medical need to set forth a viable Eighth Amendment medical claim. See Spruill v. Gillis, 372 F.3d at 235-36; Natale v. Camden Cty. Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003). Courts reviewing such claims must determine if the defendant was: (1) deliberately indifferent (the subjective component) to (2) the plaintiff's serious medical needs (the objective component). Monmouth Cty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987).

With respect to the deliberate indifference component, a complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment [as] medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106. When a prisoner has actually been provided with medical treatment, one cannot always conclude that, if such treatment was inadequate, it was no more than mere negligence. See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993). If inadequate treatment results simply from an error in medical judgment, there is no constitutional violation. See id.

The Court of Appeals for the Third Circuit in Durmer added that a non-physician defendant cannot be considered deliberately indifferent for failing to respond to an inmate's medical complaints when he is already receiving treatment by the prison's medical staff.

However, where a failure or delay in providing prescribed treatment is deliberate and motivated by non-medical factors, a constitutional claim may be presented. See id.

The BOP Defendants (Lappin, Watts, and Norwood), Associate Warden Nicklin and Warden Scism are clearly non-medical defendants.[8] Since there is no claim asserted by Plaintiff that any of the treating physicians recommended a referral or surgical procedure which was denied by either the BOP, URC or any of the individual Defendants, Plaintiff's general contention that the non-medical Defendants should have referred him for a surgical procedure does not set forth a viable constitutional claim under Durmer. Since there are simply no claims that any prescribed course of treatment was delayed or denied on the basis of non-medical reasons, a viable claim of medical deliberate indifference has not been stated against non-medical Defendants Lappin, Watts, Norwood, Nicklin and Scism.

Documents submitted by the Defendants identify Spotts as being a licensed practical nurse and Assistant Health Services Administrator. See Doc. 26-1 Exhibit A, p. 3. It will also be presumed that HSA Laino is a medical professional. The gist of Plaintiff's medical care related claims is his disagreement with the course of treatment provided, particularly that there was approximately a one-year delay from August 2010 to September 2011 before he was deemed to be a candidate for cataract surgery on his left eye.

The Complaint and undisputed record clearly recognizes that Plaintiff was provided with periodic evaluations and treatment by specialists, an ophthalmologist and an optometrist. However, prior to September 12, 2011, there was no evaluation that Nichols required cataract surgery on his left eye. Moreover, when a surgical request was eventually made by Plaintiff's

---

[8] There is no contention by Plaintiff or indication in the record that any of theses officials had any medical experience or training.

treating physicians it was approved by the URC approximately nine (9) days later.

Since Plaintiff was referred to both an outside ophthalmologist and later an optometrist for evaluation, there is no basis for a claim that Defendants Laino and Spotts failed to refer the Plaintiff for evaluation by an outside medical provider. Second, there is no indication that any medical personnel requested or recommended to Defendants Laino and/or Spotts that Plaintiff's left eye required cataract surgery and that approval of said request was denied or unnecessarily delayed.[9]

Moreover, it is undisputed that when a recommendation for left eye cataract surgery was eventually made, it was approved by the prison's medical staff in a timely fashion. Finally, to the extent that Plaintiff is claiming that surgery was not timely recommended because it was improperly precluded under the Ophthalmology Guidance Clinical Practice Guidelines, there are no facts presented which would establish that either Laino or Spotts had any personal involvement in the development of said guidelines.

In conclusion, the undisputed facts establish that Plaintiff was treated by at least two outside specialists and there was no rejection by Laino or Spotts of any additionally prescribed treatment. Likewise, there are no facts alleged which could support a finding that those Defendants failed to provide or delayed any treatment prescribed for Plaintiff or were involved in the development of any internal guidelines which unnecessarily delayed Plaintiff's eligibility for cataract surgery. Thus, Defendants Laino and Spotts are also entitled to entry of summary judgment with respect to the claims of deliberate indifference to Plaintiff's medical needs. This determination is bolstered by the fact that Plaintiff has not come forward with any expert medical

---

[9] Under Estelle, any claims by Plaintiff challenging the quality of the medical care provided are not properly asserted in a civil rights action.

testimony which would establish that there was any medical treatment which he should have received but was denied or that the care he was given was somehow deficient due to any conduct by Defendants.[10]  An appropriate Order will enter.[11]

_____
United States District Judge

Date: May 25, 2012

---

[10] It is also argued that Defendants are entitled to qualified immunity. See Doc. 23, p. 17. Based upon the Court's conclusion that a viable civil rights claim has not been set forth against any of the Defendants, this argument will not be addressed.

[11] If Plaintiff can present facts showing that any Defendants were involved in the development and implementation of the Ophthalmology Clinical Practice Guidelines referenced in the Complaint and can establish that the application of those guidelines constituted deliberate indifference to his need for cataract surgery, he may file a motion for reconsideration within fourteen (14) days of the date of this Memorandum and Order.